**LOS ANGELES MEMORIAL COLISEUM COMMISSION, Plaintiff,**

v.

**NATIONAL FOOTBALL LEAGUE, an unincorporated association, et al., Defendants.**

**OAKLAND RAIDERS, LTD., Cross-Claimant,**

v.

**NATIONAL FOOTBALL LEAGUE, an unincorporated association, et al., Cross-Defendants.**

**No. 78–3523–HP.**

United States District Court, C. D. California.

Jan. 5, 1981.

Blecher, Collins & Hoecker, Maxwell M. Blecher, Howard F. Daniels, M. Brian McMahon, Los Angeles, Cal., for plaintiff, Los Angeles Memorial Coliseum Commission.

O'Melveny & Myers, Patrick Lynch and Clark Waddoups, Los Angeles, Cal., Coving-

ton & Burling, Hamilton Carothers and Paul J. Tagliabue, Washington, D. C., for National Football League defendants.

Nelson, Ritchie & Gill, Rodney E. Nelson and Richard G. Ritchie, Los Angeles, Cal., Cotchett, Dyer & Illston, Joseph W. Cotchett, Susan Illston, Rand N. White, San Mateo, Cal., for defendants Los Angeles Rams Football Co. and Georgia Rosenbloom Frontiere.

Alioto & Alioto, Joseph L. Alioto, Lasky, Haas, Cohler & Munter, Moses Lasky, San Francisco, Cal., for cross-claimant Oakland Raiders, Ltd.

Flint & MacKay, Michael K. Inglis, Robert F. Kull, Frank Gooch, III, Richard Gilcrest, Los Angeles, Cal., for Melvin Durslag and Scot J. Paltrow.

PREGERSON, Circuit Judge, Sitting by Designation.

This matter is before the court on motions by Melvin Durslag, a sports columnist for the Los Angeles Herald Examiner, and Scot J. Paltrow, an investigative reporter, also with the Herald Examiner, for protective orders and to quash subpoenas duces tecum served on them by the National Football League ("NFL"). Having considered the affidavits, the memoranda of law, and the oral argument of counsel, the court concludes that the motion to quash the subpoenas should be granted.

The subpoenas, dated December 15, 1980, required Durslag and Paltrow to appear on December 22, 1980 at the office of the NFL's attorneys, O'Melveny & Myers.[1] The subpoenas also required Durslag and Paltrow to bring with them "any and all notes, file memoranda, tape recordings or other materials reflecting" any conversations that Durslag or Paltrow might have had since January 1, 1977 with any of a number of listed persons regarding the proposed transfer of the Oakland Raiders from Oakland to Los Angeles; the move of the Los Angeles Rams from the Los Angeles Coliseum to Anaheim's Big A Stadium; the

Los Angeles Coliseum's action against the NFL; Super Bowl tickets; the Los Angeles Rams; or the NFL. The list of persons with whom Durslag and Paltrow might have discussed the above topics included certain named persons, and also a group of unnamed persons described as follows: "any ... partner, agent, officer or employee of the Oakland Raiders"; "any ... official, agent, employee or representative of the Los Angeles Coliseum Commission, the County of Los Angeles, or the City of Los Angeles"; "any ... employee, agent or representative or former employee, agent or representative of the Los Angeles Rams"; and "any ... official of the National Football League and any partner, officer, employee, agent or representative of any member club of the National Football League."

In affidavits filed with this court on December 19, 1980, Durslag and Paltrow both stated that to require them to disclose unpublished materials regarding their reporting would necessarily force disclosure of information given to them in confidence as well as the identities of their sources. Neither reporter has participated in any transaction that involves the subject matter of this lawsuit. Nor has either of them been a percipient witness to any such transaction. Both state that their "notes and file memoranda" concerning the subjects listed in the subpoena are privileged from disclosure. Accordingly, they claim the "journalist's privilege," which they assert stems from the First Amendment to the United States Constitution and from both state and federal law.

## I. The Journalist's Privilege

 While the primary underlying claims in this case are based on federal antitrust law, plaintiffs have also included in their current complaints business tort claims based on state law. Rule 501 of the Federal Rules of Evidence provides that

---

1. Counsel agreed to extend the appearance date for both Durslag and Paltrow to December 24th. At the conclusion of oral argument on

December 23rd, the court stayed all proceedings involving the subpoenas until further order.

the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States .... However, in civil actions ... with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with state law.

Thus, under Rule 501, when a civil action in federal court contains a combination of federal and state claims or defenses, federal courts should evaluate claims of privilege under both state and federal law. Moreover, even in cases in which all claims are based exclusively on federal law, federal courts, in "moulding federal privileges under the common law development approach of Rule 501," have traditionally sought guidance from existing state law. 10 J. MOORE FEDERAL PRACTICE ¶ 501.08 (2d ed. 1976). *See, e. g., Riley v. City of Chester,* 612 F.2d 708, 715 (3rd Cir. 1979); *Baker v. F & F Investment,* 470 F.2d 778, 781–82 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co.,* 455 F.Supp. 1197, 1200 (N.D.Ill.1978); *Apicella v. McNeil Laboratories, Inc.,* 66 F.R.D. 78 (E.D.N.Y.1975).

### A. *Federal Law*

■ The Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), expressly recognized that reporters' newsgathering activities qualify for First Amendment protection. 408 U.S. at 681, 707, 92 S.Ct. at 2656, 2670. While a five-to-four majority of the court held that, in the context of a grand jury investigation into the commission of a crime, reporters had an obligation to respond to grand jury subpoenas and to answer relevant questions, the limited scope of this holding was carefully emphasized. 408 U.S. at 707, 92 S.Ct. at 2670; 408 U.S. at 708, 92 S.Ct. at 2671 (Powell, J., concurring). In his concurrence, Justice Powell, the majority's fifth member, stated that

[N]o harassment of newsmen will be tolerated. If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

408 U.S. at 709–10, 92 S.Ct. at 2671. Moreover, as Judge Merhige observed in *Gilbert v. Allied Chemical Corp.,* 411 F.Supp. 505 (E.D.Va.1976), if one aligns Justice Powell's concurring opinion with Justice Stewart's dissent, joined by Justices Brennan and Marshall, and with Justice Douglas's dissent, a majority of five justices accepted the proposition that journalists are entitled to at least a qualified First Amendment privilege. *Id.* at 509.

Following *Branzburg,* federal appellate and trial courts have recognized a qualified federal common law "journalist's privilege." *See, e. g., United States v. Cuthbertson,* 630 F.2d 139 (3rd Cir. 1980); *Riley v. City of Chester, supra; Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433 (10th Cir. 1977); *Farr v. Pitchess,* 522 F.2d 464 (9th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976); *Baker v. F & F Investment, supra; Bursey v. United States,* 466 F.2d 1059 (9th Cir. 1972); *United States v. Hubbard,* 493 F.Supp. 202 (D.D.C.1979); *Zerilli. v. Bell,* 458 F.Supp. 26 (D.D.C.1978); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co., supra; Altemose Construction Co. v. Building and Construction Trades Council,* 443 F.Supp. 489 (E.D.Pa.

1977); *Gilbert v. Allied Chemical Corp., supra; Loadholtz v. Fields,* 389 F.Supp. 1299 (M.D.Fla.1975); *Democratic National Committee v. McCord,* 356 F.Supp. 1394 (D.C. 1973). In this circuit, application of the *Branzburg* holding to non-grand jury cases requires "that the claimed First Amendment privilege and the opposing need for disclosure be judicially weighed in light of the surrounding facts and a balance struck to determine where lies the paramount interest." *Farr v. Pitchess,* 522 F.2d at 468. Stated alternatively, the question is whether "the paramount interest served by the unrestricted flow of public information protected by the First Amendment outweighs the subordinate interest served by the liberal discovery provisions embodied in the Federal Rules of Civil Procedure." *Loadholtz v. Fields,* 389 F.Supp. at 1300.

While this privilege evolved originally to protect journalists' confidential sources, *see, e. g., Baker v. F & F Investment,* several cases have suggested that the scope of the privilege might be broader, e. g., covering journalists' work product and resource materials as well.[2] In this regard, the court notes that Congress recently enacted the Privacy Protection Act of 1980 ("Act"), Pub.L.No.96–440, 94 Stat. 1879 (1980), protecting journalists' work product and, to a lesser extent, non-work product documentary materials, against seizure by the government for use in criminal cases.[3]

Courts have emphasized that the public interest in protecting journalists' confidential sources is even stronger in civil cases than it is in criminal cases. *See, e. g., Baker v. F & F Investment,* 470 F.2d at 783 ("in civil cases . . . the public interest in

non-disclosure of a journalist's confidential sources outweighs the public and private interest in compelled testimony"); *Altemose Construction,* 443 F.Supp. at 491 ("Such a case-by-case analysis is mandated even more in civil cases than in criminal cases, for in the former the public's interest in casting a protective shroud over the newsmen's sources and information warrants an even greater weight than in the latter."). Judge Merhige has explained that, in civil cases,

> one cannot validly contend that a newsman is concealing the criminal conduct of his source, or shielding the anonymity of criminal figures. . . . While there is a social interest in resolving conflicts with justice and fairness between private litigants, and the rules of compulsory process are intended to further that interest, the gain in information achieved by forcing newsmen to reveal their confidences must be weighed against the restricted access that newsmen would have to their informational sources if such a procedure is adopted. There are generally several avenues open to the civil litigant to acquire the sought after information, of which subpoenaing newsmen is but one. Accordingly the Court concludes that in civil litigation, the First Amendment requires that newsmen be given a privilege against revealing their confidential sources that may be abrogated only by a showing on the part of the moving party that his only practical access to crucial information necessary for the development of the case is through the newsman's sources. For example, in meritorious libel actions, in which the issue of the

---

**2.** *See United States v. Cuthbertson,* 630 F.2d at 147 ("We do not think that the privilege can be limited solely to protection of sources. The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes."); *Altemose Construction Co. v. Building & Construction Trades Council,* 443 F.Supp. at 491 ("[T]his qualified privilege can even apply when the news source and, perhaps a portion of the withheld writing, are not confidential"); *Loadholtz v. Fields,* 389 F.Supp. at 1303 ("The compelled production of a reporter's resource materials is equally as invidious

as the compelled disclosure of his confidential informants.").

**3.** The Act provides that a journalist's work product may be seized in connection with a criminal case only if "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate," or if "there is reason to believe that the immediate seizure of such materials is necessary to prevent the death of, or serious bodily injury to, a human being." Section 101(a).

case was the truth of what had been published by a defendant reporter, a reporter may have to reveal his source of the information because such a disclosure may go to the "heart of the plaintiff's claim."

*Gilbert v. Allied Chemical Corp.*, 411 F.Supp. at 510 (citations omitted).

■ In civil cases, courts faced with motions to enforce or to quash subpoenas directed against non-party journalists have refused to enforce such subpoenas, absent a showing: (1) that the information is of certain relevance; (2) that there is a compelling reason for the disclosure; (3) that other means of obtaining the information have been exhausted; and (4) that the information sought goes to the heart of the seeker's case. *See Silkwood v. Kerr-McGee Corp.*, 563 F.2d at 438; *Baker v. F & F Investment*, 470 F.2d at 283 (identity of journalist's source did not go to the heart of appellants' case); *Garland v. Torre*, 259 F.2d 545 (2d Cir.), *cert. denied*, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958); *Zerilli v. Bell*, 458 F.Supp. at 29 (failure to exhaust other means); *Gulliver's Periodicals, Ltd.*, 455 F.Supp. at 1204 ("not a source of crucial information going to the heart of the counterclaim"); *Altemose Construction*, 443 F.Supp. at 492 (no "particularized need" and no demonstration that the information could not be secured from alternative sources); *Gilbert v. Allied Chemical Corp.*, 411 F.Supp. at 510–11 (information not shown to be crucial to the development of the case nor inaccessible through other channels).

■ In the instant case, the NFL argues that it needs the subpoenaed information not for its defense against the underlying claims but to support its motion for a change of venue based on the alleged prejudicial effect of heavy local publicity on the subject matter of the case. The NFL claims that if it can show through the reporters' records and testimony that parties to the case and other persons are leaking confidential and inaccurate information to reporters who are printing the information without checking on its accuracy, these facts would be relevant to the NFL's claim that it cannot receive a fair trial in the Los Angeles area.

■ The NFL also argues that, assuming the information sought is subject to the journalist's privilege, that privilege has been waived with respect to at least some of the reporters' sources because those sources have voluntarily indicated that they were the ones who gave information to the reporters. This argument, however, misconceives the nature of the privilege. The journalist's privilege belongs to the journalist alone and cannot be waived by persons other than the journalist. *See United States v. Cuthbertson*, 630 F.2d at 147.

■ The NFL has failed to show that it has exhausted other means of obtaining this information, or that the information sought goes to the heart of any element of the underlying claims.[4] Moreover, it seems doubtful that unpublished and undisclosed information is relevant to the NFL's claim that the volume and nature of information already published will undermine its ability to receive a fair trial. In a similar case defendants sought the unpublished files of two radio station news departments in connection with defendants' motion for a change of venue based on prejudicial effects of heavy pre-trial publicity. The court held that the unpublished material need not be disclosed for purposes of the venue motion because defendants already had access to the most relevant informa-

---

4. Even where the truth of the matter published is directly in controversy, courts may be cautious about compelling the production of information relating to a journalist's sources. In a libel action brought by a mayor whom Life Magazine had reported to have personal ties with known underworld figures, the court held that *Life*'s refusal to reveal the identity of its news sources would not bar the entry of sum-

mary judgment in its favor. *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). The court stated that "to compel a newsman to breach a confidential relationship merely because a libel suit has been filed against him would seem inevitably to lead to an excessive restraint on the scope of legitimate newsgathering activity." 464 F.2d at 993 n.10.

tion—the stories actually communicated to the public about the case. *Gilbert v. Allied Chemical Corp.*, 411 F.Supp. at 510.

### B. *State Law*

■ Article 1, section 2(b) of the California Constitution was recently amended to immunize journalists from being held in contempt for refusing to disclose either their sources or unpublished information obtained or prepared in the process of news-gathering.[5] Prior to the passage of this amendment, California's journalists' "shield law" was contained in section 1070 of the California Evidence Code.[6]

The California Court of Appeal, in interpreting section 1070 in *Hammarley v. Superior Court*, 89 Cal.App.3d 388, 153 Cal.Rptr. 608 (1979), stated that "the statutory privilege protecting unpublished information is not limited to material which might lead to the disclosure of a newsman's confidential sources, but encompasses all information acquired by the newsman in the course of his professional activities which he has not disseminated to the public." *Id.* at 397–98, 153 Cal.Rptr. at 613. In actually applying the privilege to the facts at hand, the court stated a test very similar to that applied by federal courts under federal common law, as described above:

> Faced with a claim of privilege the burden is on the party seeking to avoid the privilege competently to demonstrate not only that the evidence sought is relevant and necessary to his case, but that it is not available from a source less intrusive upon the privilege. Moreover, as with any attempt to discover evidence subject to a claim of privilege, a defendant must show a reasonable possibility that the evidence sought might result in his exoneration.

*Id.* at 399, 153 Cal.Rptr. at 614.

Thus, California law and federal common law appear to coincide, both in their application and in their scope, i. e., their coverage of sources as well as work product. Moreover, the broad scope of California's shield law and the fact that it has now been embodied in one of the first articles of the state's constitution "reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment . . . ." *Baker v. F & F Investment*, 470 F.2d at 782.

## II. Discovery under the Federal Rules

The NFL, although recognizing that some of the information sought from Durslag and Paltrow might be subject to the journalist's privilege, argues that the motions to quash the subpoenas and for protective orders are "premature." Citing decisions in two libel actions brought against reporters, the NFL claims that "in 'newsman's privilege' cases, depositions typically go forward, and documents are typically provided, *before* the issue of 'privilege' is raised." NFL Memorandum in Opposition at 3. The NFL therefore argues that waiting until "an actual question has been asked," or until the NFL's right to an "actual document" is

---

5. A . . . reporter, or other person connected with or employed upon a newspaper . . . *shall not be adjudged in contempt by a judicial* . . . body . . . for refusing to disclose the source of any information procured while so connected or employed . . . or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public.

 . . . . .

 As used in this subdivision, "unpublished information" includes information not disseminated to the public . . . and includes, but is not limited to, all notes, outtakes, photographs, tapes or other data of whatever sort not itself disseminated to the public . . . whether or not published information based upon or related to such material has been disseminated.

Constitution of the State of California, Article I, § 2(b), as amended June 3, 1980.

6. *See* Cal.Evid.Code § 1070 (West Supp.1980) (containing language practically identical to that of Art. I, § 2 of the California Constitution).

disputed would be "better suited to presenting an issue for decision." *Id.* at 4. Under the circumstances of this case, however, the court finds the NFL's argument to be without merit.

 Although it may make some sense for a journalist who is an actual party in a civil suit to appear and claim the privilege with regard to particular questions and documents, such a procedure should not be imposed on non-party journalists. Moreover, the Federal Rules of Civil Procedure specifically provide for motions to quash and for protective orders as means of objecting to a subpoena *before* the scheduled appearance date.

Under Fed.R.Civ.P. 45(b) a court may "upon motion made promptly and in any event at or *before the time specified in the subpoena for compliance therewith* . . . (1) quash or modify the subpoena if it is unreasonable and oppressive." (Emphasis added.) Fed.R.Civ.P. 26(c) provides that

> Upon motion . . . by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had . . . .

Persons who object to subpoenas on grounds of privilege thus have the alternative remedies under the Federal Rules of a motion to quash under Rule 45(b) or a motion for a protective order under Rule 26(c).[7] Motions to quash based on the journalist's privilege have been commonly granted by federal district courts in both civil and criminal cases. *See, e. g., United States v. Hubbard, supra* (criminal case); *Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co., supra* (civil case); *Altemose Construction Co. v. Building and Construc-*

tion Trades Council, supra* (civil); *United States v. Orsini,* 424 F.Supp. 229 (E.D.N.Y. 1976), *aff'd,* 559 F.2d 1206 (2d Cir.), *cert. denied,* 434 U.S. 997, 98 S.Ct. 636, 54 L.Ed.2d 491 (1977) (criminal); *Gilbert v. Allied Chemical Corp., supra* (civil). Accordingly, the court sees no purpose in arbitrarily postponing a decision on these motions until after the reporters have been forced to appear with the requested documents.

 In light of the foregoing analysis, to permit the NFL to interrogate Durslag and Paltrow as to their confidential sources or to rummage through their notes of confidential conversations would subvert the guarantee of freedom of the press embodied in the First Amendment and the protections for journalists' sources and work product provided by federal common law and by Article 1, § 2 of the California Constitution. The court therefore holds that the NFL's subpoenas are "unreasonable and oppressive" within the meaning of Fed.R.Civ.P. 45(b), and the motions to quash are hereby granted. As the relief requested under Fed.R.Civ.P. 26(c) would be duplicative of that already granted under Rule 45(b), the court deems it unnecessary to grant, in addition, a protective order under Rule 26(c).

THEREFORE, IT IS ORDERED that the motions by Mr. Durslag and Mr. Paltrow to quash defendants' subpoenas are granted.

---

7. *See* 5A J. MOORE FEDERAL PRACTICE ¶ 45.05[1] n.20 & ¶ 45.05[2] n.28 (2d ed. 1976). According to Professor Moore, "it appears to make no different [sic] whether a motion to resolve such issues is labeled as made under Rule 26(c) or Rule 45(b)." *Id.* at ¶ 45.05[2].